IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAYMZ HERNANDEZ, by his parents and next ) <br> friends CRYSTELLE HERNANDEZ and ) <br> JOSHUA HERNANDEZ; CRYSTELLE ) <br> HERNANDEZ; and JOSHUA HERNANDEZ; ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LAKESHA FOSTER, DCFS investigator, in her ) <br> individual capacity; PAMELA FOSTER- ) <br> STITH, DCFS supervisor, in her individual ) <br> capacity; ANDREW POLOVIN, DCFS ) <br> supervisor, in his individual capacity; and ) <br> MICHAEL RUPPE, DCFS manager, in his ) <br> individual capacity. ) <br> ) <br>       Defendants. ) | FILED: APRIL 23, 2009 <br> 09CV2461 <br> JUDGE CONLON <br> MAGISTRATE JUDGE MASON <br> CH <br><br> Civil Action No. |

**COMPLAINT**

## I.    INTRODUCTORY STATEMENT

1.    This three-count civil rights complaint brought pursuant to 42 U.S.C. § 1983 arises from the actions of the Illinois Department of Children and Family Services ("DCFS") investigators and supervisors who, without evidence and without affording any due process, tore a healthy and happy toddler from his innocent parents; and also from the actions of the DCFS investigators and supervisors who then held the toddler hostage until the parents agreed to forfeit their constitutional rights to live without unwarranted restrictions on their family life.

2.    (a)    On September 8, 2008, Plaintiff Crystelle Hernandez put Plaintiff Jaymz Hernandez, then a 15-month-old toddler, down for a nap.  After hearing Jaymz cry, Crystelle

observed that Jaymz was out of his crib, and holding his arm.  In order to seek medical attention

for Jaymz,  Crystelle took Jaymz to Sherman Hospital where he was treated for a broken arm.

Hospital personnel reported a possible case of child abuse to the DCFS Hotline.  The only other

injury Jaymz had was a small bruise above his eye from being hit with a toy.

After Jaymz was discharged from the hospital, DCFS Defendant Investigator

Lakesha Foster visited the Hernandez home later that day and observed Jaymz walking around

and playing.  Because Jaymz seemed fine, Defendant Foster contacted her supervisor.  Despite

the lack of evidence giving rise to any emergency need to involuntarily take Jaymz into State

protective custody, the DCFS Defendants directed the removal of Jaymz into protective custody.

Therefore, Defendant Foster removed Jaymz from the care and custody of his parents, Plaintiffs

Crystelle Hernandez and Joshua Hernandez.  Despite the lack of the constitutionally-requisite

evidence required to seize a child from his parents, DCFS took Jaymz and placed him with his

great-grandparents.  Defendant Foster told Crystelle that neither she nor Joshua could have any

contact with Jaymz for 48 hours but then relented to allow Crystelle to attend Jaymz's

orthopedist visit.


(b)     On the following day, September 9, 2008, Jaymz was taken to an

orthopedist to have a cast put on his arm.  DCFS Defendant Foster contacted the orthopedist who

confirmed the break "did not look like any abuse or neglect" and said it was "consistent with the

history of the child falling from a crib."


(c)     Protective custody lapsed on September 10, 2008.  DCFS Defendants did

not tell Plaintiffs that the protective custody of Jaymz had lapsed.  Instead, although the

suspicion of abuse was not confirmed by medical exam, the DCFS Defendants threatened

Plaintiffs with the continued seizure of and no contact with Jaymz unless they signed a so-called

2

safety plan restricting their custodial rights. Under duress, the Plaintiffs signed this safety plan. Under the so-called safety plan, Jaymz was not allowed to return home with Crystelle and Joshua, and Plaintiffs were not allowed any unsupervised contact with their own son.

3.      More than a week after the safety plan was implemented, DCFS finally terminated the safety plan, and allowed Crystelle and Joshua unfettered access to their own son. However, despite the determination that there was no "credible evidence" in support of the allegations against the Hernandezes, DCFS continued to investigate the family. The Hernandez family finally received notice that that DCFS had "unfounded" the allegation on December 10, 2008.

4.      Plaintiffs seek to redress the deprivation of their fundamental liberty interest in familial associations, through the Defendants' actions taken under color of state law. They seek to vindicate their rights under the First, Fourth, and Fourteenth Amendments. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek compensatory and punitive damages for the injuries to each member of the family, and pursuant to 42 U.S.C. § 1988, they seek attorney's fees.

5.      Plaintiffs include Jaymz Hernandez, a minor, whose birth date is 6/4/07. Jaymz sues through his next friends and parents Joshua Hernandez (his father) and Crystelle Hernandez (his mother). Joshua Hernandez and Crystelle Hernandez also bring this suit against Defendants on their own behalves.

6.      Defendants are the four DCFS employees, Lakesha Foster, Pamela Foster-Stith, Andrew Polovin, and Michael Ruppe, who, at the time of the incidents at issue here, were employed by the DCFS Division of Child Protection ("DCP") and who were responsible for seizing Jaymz or approving that seizure and/or for returning Jaymz under restrictions on the constitutional rights of the Plaintiffs to reside together free of governmental interference.

7.     The actions of the Defendants foreseeably caused each member of the family great emotional harm, including additional stress and anguish for Crystelle who was pregnant at the time of the ordeal.  The harm to the Hernandez family's personal security, privacy, and family life has been severe and long-term.

8.     In this Complaint Count I, Plaintiff Jaymz (through his parents as next friends, Joshua and Crystelle Hernandez) seeks damages against the named DCFS Defendants for seizing him and maintaining him in protective custody from September 8 to September 10, 2008, in violation of the Fourth Amendment.  In Complaint Count II, Plaintiffs Jaymz, Joshua, and Crystelle Hernandez seek damages against DCFS for removing Jaymz from his parents' care and subsequently restricting the right of the family members to remain together, in violation of their substantive due process rights secured by the First, Fourth, and Fourteenth Amendments.  In Complaint Count III, Plaintiffs Jaymz, Joshua, and Crystelle Hernandez seek damages against DCFS Defendants for violating their rights to procedural due process.

## II.     JURISDICTION AND VENUE

9.     This Court has jurisdiction over Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 and pursuant to 28 U.S.C. §§ 1331 and 1343(3).

10.     Venue is proper in this district under 28 U.S.C. § 1391 because

(a)     The Northern District of Illinois is the judicial district in which substantially all of the events or omissions giving rise to Plaintiffs' claims occurred;

(b)     The Defendants are found or are employed, or at the time of the incidents giving rise to this suit were so employed, in the Northern District of Illinois.

### III.    PARTIES

11.    Plaintiff Jaymz Hernandez, born June 4, 2007, is the son of Plaintiffs Joshua and Crystelle Hernandez.  Jaymz resides in Cary, Illinois, with his parents Joshua and Crystelle Hernandez.  Pursuant to Fed. R. Civ. P. 17(c), he proceeds here by his parents, Joshua and Crystelle Hernandez.

12.    Plaintiff Joshua Hernandez is married to Plaintiff Crystelle Hernandez.  Joshua is the father and Crystelle is the mother of Jaymz Hernandez.  In August 2008, Joshua, Crystelle, and Jaymz moved to Cary, Illinois, from Texas after Joshua received his terminal leave from the United States Army.  Joshua received his official discharge from the United States Army on September 1, 2008.

13.    Defendant Lakesha Foster was, at the time of the incidents giving rise to this complaint, a DCFS Investigator employed in the Woodstock DCFS office who was assigned investigative responsibilities as to an investigation involving Jaymz Hernandez.  She is sued in her individual capacity.

14.    Defendant Pamela Foster-Stith was, at the time of the incidents giving rise to this complaint, a DCFS supervisor who was the supervisor of Defendant Lakesha Foster.  As such, Defendant Foster-Stith was responsible for reviewing and approving the actions of Defendant Foster regarding Jaymz, Joshua, and Crystelle Hernandez; she did so review and approve those actions.  She is sued in her individual capacity.

15.    Defendant Andrew Polovin was, at the time of the incidents giving rise to this complaint, a DCFS supervisor who had supervisory responsibility as to Defendant Lakesha Foster.  Upon information and belief, Defendant Polovin approved the implementation of a safety plan as to Jaymz, Joshua, and Crystelle Hernandez.  He is sued in his individual capacity.

16.     Defendant Michael Ruppe was, at the time of the incidents giving rise to this complaint, a DCFS child protection manager who had supervisory responsibility as to DCFS Defendants Pamela Foster-Stith, Andrew Polovin, and Lakesha Foster.  On information and belief, Defendant Ruppe approved the taking of protective custody of Jaymz Hernandez; he also approved the subsequent safety plan, which continued the removal of Jaymz from his parents' care and custody.  He is sued in his individual capacity.

## IV.     STATEMENT OF THE CASE

### A.     Illinois Law and State Policies and Procedures Regarding the Taking of Children from Their Parents

17.     Pursuant to the Illinois Abused and Neglected Child Reporting Act ("ANCRA"), DCFS receives Hotline calls when any person makes a call based upon "reasonable cause to believe a child may be an abused child or a neglected child." 325 ILCS 5/4. ANCRA requires that DCFS promptly initiate an investigation of the merits of calls it accepts, *id*. at 5/7, sometimes working jointly with law enforcement authorities if the allegations in the call give rise to a potential criminal complaint.  *Id*. at 5/7.3.

18.     Under Illinois law, police officers, doctors, and DCFS investigative employees (as "designated" DCFS employees), and only such persons, have the legal authority to remove a child from his or her parent against the will of the parent. 325 ILCS 5/5. This authority -- the authority to take temporary protective custody -- is limited to only those circumstances when "there is not time to apply for a court order" and when leaving the child in the custody of his or her parent(s) would "endanger[] the child's health or safety."  *Id.*

19.     DCFS policies require that the taking of protective custody be approved by a DCFS supervisor and child protection manager.

20.     Once taken into temporary protective custody, a child must be brought before a judicial officer within 48 hours, exclusive of holidays and weekends, or else released back to the custody of his or her parents or guardians. 705 ILCS 405/2-9. If the judicial officer does not determine that the minor should be detained in custody or if the child is not brought before a judicial officer within the 48 hour period, the child must be released from temporary protective custody. *Id.*

21.     Illinois law does not authorize DCFS investigative employees to issue directives to families concerning their living conditions. To the extent DCFS determines that a family should live under restrictions (such as having "no unsupervised contact" with their children), DCFS may request a petition be filed with a juvenile court. The juvenile court does have the authority to issue such directives pursuant to the Juvenile Court Act, as to children for whom there is probable cause to believe they are abused or neglected, 705 ILCS 2-10 (requiring dismissal of petitions as to which there is not probable cause), and to enter orders of protection requiring families to abide by restrictive conditions on their family life. *Id*. at 2-25.

22.     In the event DCFS does secure the filing of a petition against a family after it takes protective custody of the child without a court order, if it seeks to maintain temporary custody thereafter, the Juvenile Court Act requires that the court must find that there is "immediate and urgent necessity" for the safety of the child that he or she be placed outside the custody of his or her parents. 705 ILCS 2-10.

23.     Regardless of whether DCFS takes protective custody of a child following a Hotline call, and regardless of whether it seeks or secures the filing of a juvenile court petition alleging a child is abused or neglected, DCFS regulations require it to complete investigations of Hotline calls within 60 days, except such time may be extended for good cause. 325 ILCS

5/7.12.  At the conclusion of the investigation, DCFS investigators determine if the allegations under investigation are "indicated" -- meaning that DCFS finds credible evidence of abuse or neglect -- or "unfounded"-- meaning that DCFS did not find credible evidence of abuse or neglect.  *Id*. In the event credible evidence is found, the alleged perpetrator is afforded the right to take an administrative appeal from that decision and obtain review in the DCFS administrative hearings unit.  Ill. Admin. Code tit. 89, § 336.  In such review, DCFS has the burden of proving that a preponderance of the evidence supports the allegation.  *Id.*

**B.     Statement of Facts Giving Rise to the Claims for Relief**

24.     After Jaymz's birth, Crystelle stayed home full-time while Joshua was serving with the U.S. Army in Iraq.  After he returned on January 13, 2008, Joshua continued to serve in the U.S. Army stationed at Fort Hood until his discharge.  Joshua, Crystelle, and Jaymz moved to Cary, Illinois, from Texas after Joshua was discharged from the U.S. Army.

25.     On September 8, 2008, Jaymz, who was fifteen months old and a typical toddler, pulled himself out of his crib, fell onto the floor, and landed on his arm.  Crystelle heard Jaymz's cries on the video baby monitor and went to check on Jaymz.

26.     After observing Jaymz holding his arm and screaming, Crystelle took Jaymz to Sherman Hospital.  Upon examination, the doctor concluded that Jaymz could not have fallen out of the crib since he was not yet walking or climbing.  However, Crystelle had told the doctor that Jaymz wasn't walking or climbing well *since the fall*.  Jaymz had actually been walking since he had been ten and a half months old.  Hospital personnel called DCFS to report possible child abuse based on the doctor's own interpretation of Crystelle's story.

27.     After leaving Sherman Hospital, Crystelle returned home with Jaymz.  Later that afternoon, DCFS Defendant Foster came to the Hernandez home.  Upon arriving, DCFS

Defendant Foster observed Jaymz walking, playing with toys, and interacting with his mother. DCFS Defendant Foster contacted her supervisor, DCFS Defendant Foster-Stith, by phone and stated that Jaymz looked fine, and she, Foster, did not understand why she was at the home on a report of abuse or neglect. DCFS Defendant Foster-Stith directed her to treat the case like any other protective custody case. DCFS Defendant Foster then announced to Crystelle that DCFS would be taking Jaymz into protective custody for 48 hours and then DCFS would decide what would happen. DCFS Defendant Foster also told Crystelle and Joshua that they would likely need to go to court, but DCFS Foster would try to keep it out of court. DCFS Defendant Foster then physically took Jaymz to his great-grandparents after convincing her supervisor that the great-grandparents would provide a suitable placement. DCFS Defendant Foster told Crystelle that neither she nor Joshua could have any contact with Jaymz for 48 hours. Crystelle requested to be present when Jaymz got his cast. DCFS Defendant Foster first told Crystelle that she did not know if this would be possible, but she later agreed that Crystelle could be present.

28.     DCFS Defendant Michael Ruppe was required to approve the taking of protective custody of Jaymz Hernandez and, upon information and belief, he did so.

29.     On September 9, 2008, Jaymz went to a doctor at Associates in Orthopaedic Surgery to have a cast put on his arm. Later in the day, the treating physician, Dr. Arnold Herbstman, told DCFS Defendant Foster that this kind of fracture only occurs from a fall. He told DCFS Defendant Foster that the break was consistent with a fall and not abuse.

30.     Later that day, DCFS Defendant Foster contacted Crystelle to let her know that the State's Attorney had not accepted the case because there was not enough evidence. The State's Attorney told DCFS Defendant Foster that there was "not enough to file a petition. We have to prove immediate and urgent and I do not see that we have that." At this time, because

the State's Attorney had determined that there was not enough evidence to pursue a petition, the allowable period for temporary protective custody had lapsed, and DCFS could no longer hold Jaymz. 705 ILCS 2-10. Despite the fact that the temporary custody period had lapsed, when Crystelle asked if her son could come home, DCFS Defendant Foster denied Crystelle's request, stating that the 48-hour window had not passed.

31.     On September 10, 2008 -- more than 48 hours after Jaymz had been taken away from the Hernandez family -- DCFS Defendant Foster arrived at the Hernandez home not to restore full custody to Crystelle and Joshua but to implement a restrictive safety plan. She did not notify Crystelle or Joshua that temporary protective custody of Jaymz had lapsed or that they had full, unfettered custody rights in light of the State's Attorney's rejection of the temporary custody request. DCFS Defendant Foster told Crystelle and Joshua that Jaymz could not return home, that they could not have any unsupervised contact with Jaymz, that DCFS would have to conduct a background check from the time they were in Texas, that the great-grandparents now were the legal guardians of Jaymz (which was false), that Crystelle and Joshua had no parental rights (which was also false as parental rights cannot be terminated without a lengthy judicial process), and that they could not see their son unless they signed a safety plan.

32.     Joshua and Crystelle signed the safety plan (which DCFS had strong-armed them into signing) in order to see their son. Crystelle then inquired as to how they could get their son back. DCFS Defendants informed Crystelle and her husband that DCFS needed to obtain the opinion of the DCFS doctor before they could close the investigation. No hearing to challenge the condition (that their son remain out of their home and that their contact must be supervised) was offered to the Joshua and Crystelle.

33.    Both DCFS Defendant Michael Ruppe and DCFS Defendant Andrew Polovin reviewed and approved of the safety plan that was forced upon the plaintiffs.

34.    On September 11, 2008, DCFS Defendant Foster talked to a third doctor – Dr. Rosado -- who told her that the type of fracture Jaymz sustained was rare in abuse situations.

35.    On September 15, 2008, Jaymz was taken to a DCFS-referred doctor for a full exam.  Crystelle continued to contact DCFS Defendant Foster to find out when Jaymz could come home.  DCFS Defendant Foster continued to state that she needed an opinion from the DCFS-referred doctor before Jaymz could return home and before Crystelle and Joshua could have unsupervised contact with Jaymz.

36.    On September 18, 2008, DCFS Defendant Foster called Crystelle at approximately 4:00 p.m. and told her that Jaymz could return home even though the DCFS-referred doctor had not had an opportunity to look at the x-rays.  DCFS Defendant Foster did not tell Crystelle and Joshua that the DCFS-referred doctor was in agreement that "the child's injuries to the wrist is not due to abuse."  However, Jaymz still was not allowed to return home with Crystelle until she signed the safety plan termination.  DCFS Defendant Foster did not arrive until eight p.m. that evening for the signing of the safety plan.

37.    On October 20, 2008, DCFS Defendant Foster said they were still waiting for the DCFS-referred doctor's written opinion so they were unable to close the case.

38.    On November 3, 2008, DCFS Defendant Foster apologized to Crystelle that the case was not closed because she needed additional medical reports.  The Hernandez family had already provided all of Jaymz's medical records and the contact information in their position. On the same day, DCFS Defendants Foster and Foster-Stith agreed that there was no evidence of abuse and recommended "unfounding" the case.

11

39.     On November 27, 2008, DCFS sent Crystelle a letter notifying her that DCFS had determined the allegations against them were "unfounded."  DCFS has had no further contact with the family.

40.     At all times relevant to this complaint, each of the Defendants acted under color of state law.

41.     In removing Jaymz from his parents' care and custody, Defendants violated clearly established constitutional rights of which a reasonable person should have known.

42.     In removing Jaymz from his parents' care and custody, DCFS Defendants acted intentionally or recklessly or with deliberate indifference to the consequences of their actions.

43.     In conditioning the return of Jaymz upon the Plaintiffs' coerced agreement to forego constitutional rights and in misrepresenting the basis for their action, the DCFS Defendants violated clearly established constitutional rights of which a reasonable person should have known, by acting intentionally or recklessly or with deliberate indifference as to the consequences of their actions.

44.     The actions of the DCFS Defendants participating in the removal of Jaymz from his parents' care and custody, and the later actions of DCFS in forcing the Hernandez family to agree to the infringement of their privacy and rights of familial association in order to have any contact with their son while he remained placed by DCFS with the grandparents, have caused irreparable severe and long-lasting injury to the family.  After the incident, Crystelle and Joshua were emotionally scarred and traumatized. For example, Crystelle had trouble sleeping, as she constantly worried about DCFS coming to take her child away on any pretense.  The family went through this traumatic experience while Crystelle was pregnant – adding to the emotional toll on the family – and causing Crystelle to actually fear a miscarriage due to the emotional trauma

caused by the Defendants' acts. Even now, Crystelle fears that any slight bump or bruise on any of her children, no matter how innocuous, will provide DCFS an excuse to take away her children -- a constant state of fear perpetuated by the Defendants' actions.

## CLAIMS FOR RELIEF

## COUNT I:

## (42 U.S.C. § 1983 Claim for Violation of the Fourth Amendment Right Not to Be Subject to an Unreasonable Seizure)

45.     The Plaintiff in Count I is Jaymz Hernandez.

46.     The Count I Plaintiff incorporates paragraphs 1-44 as if fully set forth herein.

47.     The Count I Defendants are all Defendants herein.

48.     The Count I Defendants, acting individually and/or in concert with one or more of the other Count I Defendants, violated the rights of the Count I Plaintiff under the Fourth Amendment to the United States Constitution (as applicable to the States under the Fourteenth Amendment to the United States Constitution), by directing or engaging in his seizure from the care and custody of his parents: (a) without definite and articulable evidence giving rise to a reasonable suspicion that he had been abused or neglected by Crystelle Hernandez or was in immediate danger of such abuse or neglect; (b) without definite and articulable evidence giving rise to a reasonable suspicion that he had been abused or neglected by Joshua Hernandez or was in immediate danger of such abuse or neglect; and c) without a warrant.

49.     The actions and conduct of the Count I Defendants set forth above caused injury to the Count I Plaintiff.

50.     As relief, Plaintiff demands compensatory damages against all defendants in an amount not less than $50,000, reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate.

13

51.     As relief, Plaintiff also seeks an award of punitive damages against the DCFS Defendants.

## COUNT II:

### (42 U.S.C. § 1983 Claim for Violation of Substantive Due Process Rights to Familial Association)

52.     Plaintiffs in Count II are Jaymz Hernandez, Crystelle Hernandez, and Joshua Hernandez.

53.     Plaintiffs incorporate paragraphs 1-44 as if fully set forth herein.

54.     Defendants in this Count are all Defendants herein.

55.     The claim set forth in this Count is brought pursuant to 42 U.S.C. § 1983.

56.     The Count II Defendants, acting individually and/or in concert with one another, violated the Plaintiffs' substantive due process rights to familial association, familial autonomy, familial integrity, and family privacy by arbitrarily separating Jaymz from his parents and taking him into State temporary protective custody without possessing the requisite definite and articulable evidence giving rise to a reasonable suspicion that he had been or would be abused or neglected by Crystelle or Joshua.

57.     By holding Jaymz away from his parents during the period in which he was detained in State temporary protective custody, the DCFS Defendants violated the family autonomy and family privacy rights of the Plaintiffs.

58.     By conditioning contact with Jaymz upon acceptance of severe restrictions in the Plaintiffs' exercise of their rights to reside together as a family without interference by the State, and by falsely representing the facts and legal basis upon which its conditions were imposed, the DCFS Defendants, acting individually and/or in concert with one another, violated the plaintiffs' substantive due process rights to familial association, familial autonomy, familial integrity, and

family privacy without the constitutionally requisite evidence required to impose such restrictions.

59.     The actions and conduct of the Count II Defendants caused injury to the Count II Plaintiffs.

60.     As relief, the Count II Plaintiffs seek compensatory damages in an amount of at least $50,000 for each Plaintiff, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief, including but not limited to an award of costs, as the Court deems appropriate.

61.     The Count II Plaintiffs seek an award of punitive damages against the DCFS Defendants.

## COUNT III:

### (42 U.S.C. § 1983 Claim for Violation of Procedural Due Process Rights)

62.     Plaintiffs in Count III are Jaymz Hernandez, Crystelle Hernandez, and Joshua Hernandez.

63.     Plaintiffs incorporate paragraphs 1-44 as if fully set forth herein.

64.     Defendants in this Count are all Defendants herein.

65.     The claim set forth in this Count is brought pursuant to 42 U.S.C. § 1983.

66.     The Count III Defendants, acting individually and/or in concert with one another, violated the Plaintiffs' procedural due process rights by taking protective custody of Jaymz even though there was no emergency and even though there was ample time to secure a court order prior to taking such action, had the juvenile court determined that such action was warranted.

67.     The DCFS Defendants, by demanding that the Plaintiffs accept restrictions in their right to live together as a family without State intervention as a condition for returning Jaymz to the home, violated the Plaintiffs' procedural due process rights by failing to afford any

procedure by which the restrictions thereby imposed could be challenged as an unlawful deprivation of liberty unsupported on the merits.

68.     By failing to inform Plaintiffs of the claims against them and the basis for the DCFS allegations, by failing to provide essential information as to the Plaintiffs' own rights to maintain their family, by misrepresenting the legal remedies available to the Plaintiffs, and by misrepresenting the actions they had taken or intended to take, the DCFS Defendants violated the due process rights of the Count III Plaintiffs.

69.     The actions and conduct of the Count III Defendants caused injury to the Count III Plaintiffs.

70.     As relief, the Count III Plaintiffs seek compensatory damages in an amount of at least $50,000 for each Plaintiff against all Defendants, reasonable attorneys fees pursuant to 42 U.S.C. § 1988, and any other relief including, but not limited, to an award of costs as the Court deems appropriate.

71.     The Count III Plaintiffs seek an award of punitive damages against the DCFS Defendants.


Dated: April 23, 2009                    Respectfully Submitted,

                                         Jaymz Hernandez, Joshua Hernandez, and Crystelle
                                         Hernandez

                                         By:     /s/ Julie A. Bauer
                                                 Julie A. Bauer
                                                 John Kness
                                                 Chaitanya Maddali
                                                 Joanna Wade
                                                 Winston & Strawn LLP
                                                 35 West Wacker Dr.
                                                 Chicago, Illinois 60601
                                                 Telephone (312) 558-5600

Facsimile (312) 558-5700
jbauer@winston.com
jkness@winston.com
cmaddali@winston.com
jwade@winston.com

Diane L. Redleaf
Family Defense Center
725 S. Wells #702
Chicago, Illinois 60607
Telephone (312) 356-3202 ext. 11
Facsimile (312) 356-3202
dlredleaf@aol.com

*Counsel for Plaintiffs*