IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAYMZ HERNANDEZ, by his parents and next friends CRYSTELLE HERNANDEZ and JOSHUA HERNANDEZ; CRYSTELLE HERNANDEZ; and JOSHUA HERNANDEZ,<br><br>Plaintiffs,<br><br>v.<br><br>LAKESHA FOSTER, DCFS investigator, in her individual capacity; PAMELA FOSTER-STITH, DCFS supervisor, in her individual capacity; ANDREW POLOVIN, DCFS supervisor, in his individual capacity; and MICHAEL RUPPE, DCFS manager, in his individual capacity,<br><br>Defendants. | Civil Action No.: 09 C 2461<br><br>Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

Jaymz Hernandez, Crystelle Hernandez, and Joshua Hernandez (collectively "plaintiffs") bring this civil rights complaint under 42 U.S.C. § 1983 against four individual employees (collectively "defendants") of the Illinois Department of Children and Family Services ("DCFS"). The complaint, stemming from a child abuse investigation, alleges defendants unlawfully seized Jaymz Hernandez in violation of his rights under the Fourth and Fourteenth Amendments (Count I), and violated plaintiffs' substantive due process right to familial association (Count II) and their procedural due process rights (Count III). Defendants move to dismiss the complaint for failure to state a claim. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are derived from the complaint and accepted as true for purposes of this motion. Joshua and Crystelle Hernandez are the parents of Jaymz, born June 4, 2007 (for ease of identification, the court uses plaintiffs' first names). On September 8, 2008, Crystelle was home with Jaymz when he pulled himself out of his crib and fell to the floor. She immediately brought Jaymz to the hospital where he was diagnosed with a fracture in his arm. Hospital personnel, not believing Jaymz could have fallen out of a crib at his age, contacted DCFS to report a possible incident of child abuse.

Defendant Foster, a DCFS investigator, visited the Hernandez home later that day to follow up on the call. She observed Jaymz walking, playing, and interacting with Crystelle. Foster contacted her supervisor, defendant Foster-Stith, by phone and stated that Jaymz looked fine and she could not understand why she was there on a report of abuse or neglect. Foster-Stith directed her to treat the case like any other protective custody situation. Foster told Crystelle that she would be taking Jaymz into protective custody for 48 hours. Jaymz was taken to stay with his great-grandparents, and Foster told Crystelle that neither she nor Joshua could have any contact with Jaymz during the next two days.

The next day, Jaymz was taken to an orthopedist to have a cast put on his arm. Foster allowed Crystelle to be present. The physician told Foster that the type of fracture Jaymz suffered only occurs from falls and was not consistent with abuse. Later that day, Foster contacted Crystelle to let her know that the State's Attorney decided there was insufficient evidence to file a petition for a temporary custody hearing. Illinois law provides that once taken into temporary protective custody, a child must be brought before a judicial officer

2

within 48 hours, exclusive of holidays or weekends, or else released back to the custody of his or her parents or guardians. 705 ILCS 405/2-9. When Crystelle asked if Jaymz could come home, Foster stated that the 48 hour window had not yet passed.

On September 10, 2008, instead of restoring full custody to Crystelle and Joshua, Foster arrived at the Hernandez home to implement a restrictive safety plan. Foster did not notify Crystelle and Joshua that, under Illinois law, the protective custody period had lapsed and they now had full, unfettered custody rights to their child. Instead, Foster stated Jaymz could not return home and could not have any unsupervised contact with Crystelle or Joshua. She also falsely stated the great-grandparents were now Jaymz's legal guardians and that Crystelle and Joshua lacked any parental rights. Under the proposed safety plan, Jaymz would continue not to reside in the Hernandez home and his parents would not be permitted unsupervised contacts with him. Crystelle and Joshua signed the safety plan, having been told they could not see Jaymz otherwise.

Defendants then told Crystelle she would not get her son back until DCFS obtained the opinion of a DCFS-referred doctor. At no time did defendants offer Crystelle and Joshua a hearing to challenge the safety plan's conditions. On September 11, 2008, defendant Foster consulted another doctor who informed her the type of fracture Jaymz sustained was rare in abuse situations. Four days later, Jaymz was taken to a DCFS-referred doctor for a full exam. On September 18th, ten days after DCFS initially took Jaymz into protective custody, Foster contacted Crystelle to let her know that Jaymz could return home, though Foster failed to note the DCFS-referred doctor was in agreement that Jaymz's injuries were not due to abuse. Over

3

two months later, DCFS notified Crystelle that the abuse allegations were determined to be unfounded. The Hernandez family had no contact with DCFS after that point.

## DISCUSSION

### I.     Rule 12(b)(6) Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court construes the complaint in the light most favorable to the plaintiff, accepting all of the allegations as true and drawing all reasonable inferences in plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2006). Factual allegations, however, must be sufficient to state a claim to relief that is plausible on its face, rather than merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). A claim is facially plausible when it allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

When a Rule 12(b)(6) motion is based on a defendant's assertion of qualified immunity, the court must approach the issue cautiously. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). Because qualified immunity is not merely a defense from liability, but the ability to be free from suit, courts are admonished to address the question of immunity at the earliest possible stage. *Pearson v. Callahan*, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *Tamayo*, 526 F.3d at 1090. The notice pleading requirements of Fed. R. Civ. P. 8 do not require that plaintiffs initially plead factual allegations that anticipate and overcome a qualified immunity defense. *Crawford-El v. Britton*, 523 U.S. 574, 595, 118 S.Ct. 1584, 140

4

L.Ed.2d 759 (1998); *Jacobs*, 215 F.3d at 765 n. 3. A complaint may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the claimed violation of a constitutional right was not clearly articulated at the time the violation allegedly occurred. *Jacobs*, 215 F.3d at 765 n. 3. The court may properly address this purely legal question under Rule 12(b)(6). *Id.*

## II. Qualified Immunity

Qualified immunity is an affirmative defense protecting government officials performing discretionary functions from civil damages liability unless their conduct violates clearly established statutory or constitutional rights obvious to a reasonable person. *Pearson*, 129 S.Ct. at 815; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Before liability can attach, the contours of the right must be sufficiently well established that a reasonable official would understand their conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The common framework for analyzing a qualified immunity defense is to first determine if there has been a constitutional violation and then to consider whether the right at issue was clearly established at the time of the violation. *Jacobs*, 215 F.3d at 766; *see also Pearson*, 129 S.Ct. at 821-22 (two-step analysis for qualified immunity claims is no longer mandatory, but discretionary). This methodology promotes clarity in the legal standards for official conduct, to the benefit of the government officials and the general public. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Once the qualified immunity defense is raised, it becomes the plaintiff's burden to demonstrate that a constitutional right is clearly established. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir.

1994). If the right is not clearly established, the official is immune from suit and the claim must be dismissed. *Jacobs*, 215 F.3d at 766.

Plaintiffs' complaint asserts three claims against defendants: (1) a violation of Jaymz's Fourth Amendment right to be free from an unreasonable seizure; (2) a violation of plaintiffs' substantive due process right to familial association; and (3) a violation of plaintiffs' procedural due process rights. For ease of analysis, the court will first consider whether plaintiffs have sufficiently alleged each constitutional violation, and then whether those rights were clearly established.

### A. Fourth Amendment Claim

Jaymz contends defendants violated his constitutional right against unreasonable seizure when they removed him from his home without a court order or evidence giving rise to a reasonable suspicion that he had been abused or neglected by his parents. A person is "seized" when, in view of all surrounding circumstances, a reasonable person would not have felt free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The Fourth Amendment's protection extends beyond criminal arrests to include warrantless intrusions by the government during civil investigations, including intrusions by child welfare workers. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir. 2000); *Tenenbaum v. Williams*, 193 F.3d 581, 601-06 (2d Cir. 1999).

In this case, a 15-month-old child was physically removed from his home at the direction of DCFS and separated from his parents. Under these circumstances, no reasonable child would have felt free to leave. *See Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th

6

Cir. 2000) (small child physically carried away from family by government employees is "seized"); *Tenenbaum*, 193 F.3d at 601-06 (child "seized" by government official when taken to a hospital for examination before being returned to her parents). Though Jaymz was likely too young to form a personal belief as to whether he was free to leave, defendant Foster told his mother in no uncertain terms that Jaymz was taken into protective custody and Crystelle could not have contact with him for at least 48 hours. This is sufficient to constitute a Fourth Amendment seizure. *Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d. Cir. 2000) (baby seized within the meaning of the Fourth Amendment when kept from parents' custody).

Showing a seizure occurred is not enough to establish a constitutional violation; the seizure must be unreasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (touchstone of the Fourth Amendment is reasonableness). The court must consider Jaymz's seizure in light of the specific circumstances, namely the removal of a child from his home based on an allegation of child abuse. This type of seizure is reasonable if it is pursuant to a court order, supported by probable cause, or justified by exigent circumstances, meaning that government officials have reason to believe that life or limb is in immediate jeopardy. *Brokaw*, 235 F.3d at 1010 (citation omitted); *Wooley*, 211 F.3d at 925-26 (5th Cir. 2000); *Tenenbaum*, 193 F.3d at 603-05.

The complaint alleges Jaymz was removed from his home without a court order and no petition was ever filed with a court seeking approval of the seizure. Assuming these facts are true, as the court must at this stage, Jaymz's seizure was not justified by a court order. This leaves the question whether the seizure was justified by probable cause or exigent circumstances. All the complaint reveals is that hospital personnel who initially treated Jaymz

on September 8, 2008 contacted DCFS to report a possible case of child abuse. Later that day, defendant Foster took Jaymz into temporary protective custody despite the fact that she allegedly questioned whether there was any evidence of abuse or neglect. Allegations of abuse or neglect may sometimes be so credible and severe as to warrant a child's removal prior to an investigation and a hearing. *Brokaw*, 235 F.3d at 1011. But under the facts alleged, the court cannot conclude at this point that Jaymz's seizure was justified by either probable cause or exigent circumstances. Viewing the complaint in the light most favorable to the plaintiff, Jaymz has stated a claim under the Fourth Amendment.

### B.     Substantive Due Process Claim

Plaintiffs' substantive due process claim alleges defendants violated their right to familial relations by taking Jaymz into protective custody without sufficient evidence of abuse, conditioning contact with Jaymz upon acceptance of severe restrictions in their right to reside together, and falsely representing the facts and legal basis upon which the conditions were imposed. Parents have a fundamental liberty interest under the Fourteenth Amendment in custody of their children, and children enjoy the corresponding right to be cared for by their parents. *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Brokaw*, 235 F.3d at 1018-19. The forced separation of parent from child, even for a short time, is a serious infringement upon both the parents' and child's rights. *J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir. 1997). Substantive due process is the appropriate vehicle for evaluating the constitutionality of a government-forced separation of a child from his parents. *Brokaw*, 235 F.3d at 1019.

The right to familial integrity is not absolute. *Brokaw*, 235 F.3d at 1019; *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990) (substantive due process does not bar all government interference in parental rights). The right to maintain the family unit is limited by the compelling government interest in the protection of children. *Brokaw*, 235 F.3d at 1019; *Croft v. Westmoreland County Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997). The government has no interest in protecting children from their parents unless there is some definite and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. *Brokaw*, 235 F.3d at 1019; *Croft*, 103 F.3d at 1126. Plaintiffs allege defendants lacked sufficient evidence before separating Jaymz from his parents.

Jaymz was removed from his parents' custody solely on the hospital's report of *possible* child abuse. No court order was sought prior to his removal and no petition with the court was filed afterwards. Despite a state law requiring termination of protective custody after 48 hours, *see* 705 ILCS 405/2-9, defendants purportedly coerced Crystelle and Joshua into signing a restrictive safety plan by threatening them with the loss of all parental rights. If the allegations are true, defendants infringed upon plaintiffs' familial relations. But at this stage, there is insufficient factual detail to determine whether defendants were justified in imposing a restrictive safety plan. Accepting the allegations as true, plaintiffs state a substantive due process claim that is plausible on its face.

### C. Procedural Due Process Claim

Plaintiffs assert a procedural due process claim, alleging defendants infringed on their rights in the following ways: (1) taking custody of Jaymz in the absence of an emergency or a

court order, though there was sufficient time to seek one; (2) demanding they accept restrictions on their right to reside together; (3) failing to inform them of any procedure for challenging restrictions; and (4) failing to provide accurate information regarding the DCFS investigation, their legal rights, and available legal remedies. In procedural due process claims, deprivation of a protected interest is not necessarily itself unconstitutional; what is unconstitutional is deprivation of a protected interest without due process of law. *Doe by Nelson v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir. 1990) (citation omitted). Some acts may give rise to both substantive and procedural due process claims. *Owen v. Lash*, 682 F.2d 648, 652 n. 4 (7th Cir. 1982). According to the complaint, defendants simultaneously violated plaintiffs' substantive due process rights (because their actions were not justified by a sufficiently compelling government interest) and their procedural due process rights (because the defendants' conduct violated procedural norms). *Id.*

The first step in a procedural due process claim is to determine whether plaintiff was deprived of a protected interest; the second is to determine what process was due. *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). As noted before, the liberty interest at issue, familial relations, is a protected one. *Troxel*, 530 U.S. at 65-66; *Santosky*, 455 U.S. at 753; *Brokaw*, 235 F.3d at 1018-19. The question then becomes what process was due to plaintiffs under the circumstances alleged in the complaint. Due process is a flexible concept that varies as the particular situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). At a bare minimum, however, due process means government officials will not remove a child from his home without an investigation and pre-deprivation hearing, absent exigent circumstances. *Brokaw*, 235 F.3d at 1020. Defendants allegedly

court order, though there was sufficient time to seek one; (2) demanding they accept restrictions on their right to reside together; (3) failing to inform them of any procedure for challenging restrictions; and (4) failing to provide accurate information regarding the DCFS investigation, their legal rights, and available legal remedies. In procedural due process claims, deprivation of a protected interest is not necessarily itself unconstitutional; what is unconstitutional is deprivation of a protected interest without due process of law. *Doe by Nelson v. Milwaukee County*, 903 F.2d 499, 502 (7th Cir. 1990) (citation omitted). Some acts may give rise to both substantive and procedural due process claims. *Owen v. Lash*, 682 F.2d 648, 652 n. 4 (7th Cir. 1982). According to the complaint, defendants simultaneously violated plaintiffs' substantive due process rights (because their actions were not justified by a sufficiently compelling government interest) and their procedural due process rights (because the defendants' conduct violated procedural norms). *Id.*

The first step in a procedural due process claim is to determine whether plaintiff was deprived of a protected interest; the second is to determine what process was due. *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). As noted before, the liberty interest at issue, familial relations, is a protected one. *Troxel*, 530 U.S. at 65-66; *Santosky*, 455 U.S. at 753; *Brokaw*, 235 F.3d at 1018-19. The question then becomes what process was due to plaintiffs under the circumstances alleged in the complaint. Due process is a flexible concept that varies as the particular situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). At a bare minimum, however, due process means government officials will not remove a child from his home without an investigation and pre-deprivation hearing, absent exigent circumstances. *Brokaw*, 235 F.3d at 1020. Defendants allegedly

removed Jaymz based solely on the hospital's report of possible child abuse. They took the extraordinary step of separating Jaymz from his parents' care without investigating the reports, without seeking a court hearing, and without the presence of exigent circumstances.

Due process also requires that, at a minimum, government officials not misrepresent the facts in order to obtain the removal of a child from his parents. *Brokaw*, 235 F.3d at 1020. Once taken into temporary protective custody, Illinois law requires the child be brought before a judicial officer within 48 hours or released from temporary protective custody. 705 ILCS 405/2-9. Jaymz was never brought before a judicial officer because the State's Attorney did not believe there was enough evidence to file a petition. Rather than release him from custody at the end of the 48 hour period, defendants coerced Crystelle and Joshua into signing a safety plan that required Jaymz not reside in the Hernandez home and provided only supervised parental visits. Defendants allegedly accomplished this end by falsely stating that the great-grandparents were Jaymz's legal guardians, that Crystelle and Joshua lacked any parental rights, and that signing the plan was the only way they would be permitted to see their son. Plaintiffs were never afforded a hearing before a judicial officer to challenge the plan's restrictions. Viewed in the light most favorable to plaintiffs, the complaint states a procedural due process claim that is plausible on its face.

## III. Clearly Established Rights

Assuming the factual allegations as true, the complaint adequately alleges constitutional violations as to all three counts. But qualified immunity protects officials from suit unless their conduct violates clearly established statutory or constitutional rights. *Pearson*, 129 S.Ct. at 815; *Harlow*, 457 U.S. at 818. Plaintiffs carry the burden to show that a

right is clearly established. *Kernats*, 35 F.3d at 1176. The burden may be satisfied by citing closely analogous cases or by showing that defendants' conduct was so egregious that any reasonable person would have understood their conduct to be in violation of plaintiffs' rights. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). Thus, binding precedent is not required to clearly establish a right. *See Burgess v. Lowery*, 201 F.3d 942, 944-45 7th Cir. 2000) (an analogous case may never arise because the existence of a right is so obvious that no one thought it worthwhile to litigate the issue).

### A. Unreasonable Seizure

Plaintiffs point to two Seventh Circuit decisions to show that Jaymz's Fourth Amendment rights were clearly established in this situation. Both *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003), and *Michael C. v. Gresbach*, 526 F.3d 1008 (7th Cir. 2008), articulate that a reasonable child welfare worker would know that it is a violation of a child's constitutional rights to seize or search the child, on private property, without a warrant, consent, probable cause, or exigent circumstances. Plaintiffs also note that DCFS employees are permitted by statute to take temporary protective custody of a child only when there is reason to believe the child's health or safety is in danger and there is not sufficient time to apply for a court order. 325 ILCS 5/5.

Given the decisions in *Heck* and *Gresbach*, as well as the Illinois statute limiting child seizures, defendants' right to qualified immunity has not been established at this stage. Defendants contend *Heck* and *Gresbach* are limited to actions taken at private schools, but that is too narrow an understanding. *Heck*, in particular, clearly delineated the propriety of government seizures on private property (including the removal of a child from the home),

12

noting that seizures are only reasonable when done pursuant to a court order, supported by probable cause, or justified by exigent circumstances. 327 F.3d at 514 (citing *Brokaw*, 235 F.3d at 1010). The *Heck* court affirmed defendants' qualified immunity because their actions, even though in violation of the Fourth Amendment, were conducted pursuant to a state law specifically authorizing their conduct. 327 F.3d at 515. State law only authorized defendants' actions under very limited circumstances absent here.

Child welfare workers are often entitled to qualified immunity when they remove a child from his home upon suspicion of abuse. *See Berman v. Young*, 291 F.3d 976, 984 (7th Cir. 2002) (officers entitled to qualified immunity for their pre-investigation, pre-hearing removal of a child); *Brokaw*, 235 F.3d at 1023 (state actors who cause a child's removal are generally entitled to qualified immunity); *K.D. v. County of Crow Wing*, 434 F.3d 1051, 1056 (8th Cir. 2006); *Tenenbaum*, 193 F.3d at 596. But at the pleading stage, there are simply not enough facts to determine whether qualified immunity applies. The facts, once developed, may show that defendants did not and could not have known they were acting unlawfully. Plaintiffs' allegations, however, support a reasonable inference that defendants knew their actions were unconstitutional.

### B. Substantive Due Process

Plaintiffs allege defendants' actions denied them substantive and procedural due process. To the extent these claims are premised on defendants' actions in taking Jaymz into temporary protective custody, defendants are denied qualified immunity at this time for the reasons explained above. The substantive and procedural due process claims are also

13

premised, however, on defendants' actions in continuing Jaymz's protective custody and coercing Crystelle and Joshua into signing a safety plan curtailing their parental rights.

With respect to the substantive due process claim, plaintiffs argue that defendants' conduct violated clearly established legal rights and was egregious enough that no reasonable government officer would think their actions proper. Briefly summarizing plaintiffs' allegations, defendants removed Jaymz from the custody of his parents for 10 days without a hearing, a court order, an investigation, or any evidence corroborating the initial allegation of *possible* child abuse. Though state law required Jaymz's return after 48 hours (given the lack of a hearing), defendants coerced plaintiffs into signing a safety plan continuing the separation by telling Crystelle and Joshua they would not be able to see their son otherwise. Plaintiffs correctly assert that their familial rights were established enough that a reasonable official would have understood this alleged conduct to be beyond any legal norm.

The Seventh Circuit has clearly stated the government cannot remove a child from his home without definite and articulable evidence giving rise to a reasonable suspicion that the child has been abused or is in imminent danger of abuse. *Brokaw*, 235 F.3d at 1019; *see also Croft*, 103 F.3d at 1126. According to the complaint, all defendants had was a single report of possible child abuse – an uncorroborated report that was allegedly contradicted by defendant Foster's own observations and conclusions. Further factual development may support a conclusion that defendants were justified in removing Jaymz without an investigation and a hearing. But the complaint supports a reasonable inference that defendants knew Jaymz's removal was not in accordance with the law.

Moreover, the allegations of coercion and misrepresentations are of a nature that any reasonable official would recognize that this conduct transgresses plaintiffs' constitutional rights. *Anderson*, 483 U.S. 635 at 640. State officials cannot threaten parents with the loss of their parental rights unless that threat is grounded on legal authority. *Dupuy v. Samuels*, 465 F.3d 757, 762-63 (7th Cir. 2006); *Heck*, 327 F.3d at 524-25; *Croft*, 103 F.3d at 1125-27. Defendants argue they are entitled to qualified immunity because *Dupuy* upheld the constitutionality of DCFS safety plans. But *Dupuy* did not sanction the type of conduct alleged in plaintiffs' complaint. Voluntary safety plans offered to parents *in lieu of* immediately removing the child from the parents do not raise due process concerns. 465 F.3d at 760-63. *Dupuy* rests on the premise that the threat of action was grounded in proper legal authority, and therefore the parents' consent was not coerced. If the parents chose not to sign, DCFS was permitted by law to take the child into temporary protective custody (provided the statutory requirements were met). *Id.* The court compared this by analogy to threatening litigation to obtain a settlement. *Id.* at 762. But *Dupuy* acknowledged that consent garnered through duress, extortion, or other wrongful means would be involuntary if it was not grounded in proper legal authority. *Id.* at 762-63.

Here, the safety plan was not offered in lieu of removal; it was offered afterwards and, more importantly, after 48 hours had passed without a hearing before a judicial officer. DCFS had no legal basis to thwart plaintiffs' attempts to regain custody of their son. Defendants obtained plaintiffs' signature on the safety plan only by telling them they no longer had any parental rights over Jaymz and participation in the safety plan was the only way they would have any contact with him. If the allegations are true, any reasonable government official

15

would realize that this behavior amounted to a clear constitutional violation. *See Croft*, 103 F.3d at 1125 n. 1 (finding child welfare worker's conduct "blatantly coercive" in securing a parent's separation from his daughter by improperly threatening to place her in foster care).

### C. Procedural Due Process

It is clear that a child's removal from his parents without an investigation and pre-deprivation hearing should not occur absent exigent circumstances. *Brokaw*, 235 F.3d at 1020. It is also clear that when children are removed without an investigation or pre-deprivation hearing, due process requires prompt and adequate post-deprivation review. *Id.* at 1021. These principles are codified in Illinois statutes requiring that temporary protective custody be limited to emergency situations and requiring that minors taken into custody be brought before a judicial officer within 48 hours or released. *See* 325 ILCS 5/5; 705 ILCS 405/2-9. Due process also requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents. *Brokaw*, 235 F.3d at 1020.

At this point, there is no need to reiterate the full allegations of the complaint. Suffice it to say that if the allegations are true, plaintiffs were denied the process that was due to them, and this denial would have been obvious to any reasonable government official.

### IV. Defendants Ruppe and Polovin

Defendants contend that Ruppe and Polovin should be dismissed for lack of personal involvement in the events leading up to this lawsuit. At the time the events took place, Ruppe was a child protection manager with supervisory responsibility over all of his co-defendants, whereas Polovin had supervisory responsibility over defendant Foster only. Vicarious liability does not apply to § 1983 actions. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009).

16

Defendants can only be held responsible for their own knowledge and actions, not the knowledge and actions of those they supervise. *Id.* To state a claim against Ruppe or Polovin, plaintiffs must allege that the conduct causing the constitutional deprivation occurred at their direction or with their knowledge and consent. *Nanda v. Moss*, 412 F.3d 836, 842 (7th Cir. 2005).

The allegations in the complaint, read in the light most favorable to plaintiffs, indicate that Ruppe approved the taking of Jaymz into temporary protective custody. Both Ruppe and Polovin approved the subsequent safety plan that continued Jaymz's separation from his parents at a time when temporary protective custody should have terminated. That is enough to confer liability on Ruppe for all plaintiffs' claims and on Polovin for the substantive and procedural due process claims. *See Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, (7th Cir. 2003) (approving a constitutional deprivation is sufficient to establish liability under § 1983); *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614-15 (7th Cir. 2002). There are no facts in the complaint alleging any involvement on Polovin's part in the initial removal of Jaymz from the Hernandez home. Accordingly, Count I is dismissed as to defendant Polovin only.

## IV. Discovery

The qualified immunity doctrine was fashioned at least in part to protect government officials from undue interference with their duties. *Harlow*, 457 U.S. at 806. Courts are admonished to resolve issues of qualified immunity at the earliest possible stage in litigation, preferably before allowing discovery. *Anderson*, 483 U.S. at 646. While qualified immunity seeks to protect public officials from broad reaching discovery, limited discovery may be

necessary before a court can resolve the issue. *Crawford-El*, 523 U.S. at 597-99; *Jacobs*, 215 F.3d at 765 n. 3.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint on grounds of qualified immunity is denied without prejudice to reconsideration on a summary judgment motion. Plaintiffs' unreasonable seizure claim in Count I is dismissed as to defendant Polovin only for failure to allege personal involvement. The motion is denied in all other respects.

ENTER:

Suzanne B. Conlon
United States District Judge

July 6, 2009